UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSELL K. DUNCAN, | NO. C12-546-MJP-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Russell K. Duncan appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

I.   FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 57-year-old man with a high-school education. Administrative Record ("AR") at 58. His past work experience includes

REPORT AND RECOMMENDATION - 1

1  employment as a fitter/welder.  AR at 342.  Plaintiff was last gainfully employed in June 2007.
2  AR at 342.

3  On April 15, 2009, Plaintiff filed a claim for SSI payments and an application for DIB,
4  alleging an onset date of June 19, 2007.  AR at 310-318.  Plaintiff asserts that he is disabled
5  due to symptoms related to hepatitis C and depression.  AR at 341, 389.

6  The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 113-
7  120, 125-136.  Plaintiff requested a hearing, which took place on November 22, 2010, and
8  February 15, 2011.  AR at 49-106.  On March 11, 2011, the ALJ issued a decision finding
9  Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform his
10 past work.  AR at 31-42.  Plaintiff's administrative appeal of the ALJ's decision was denied by
11 the Appeals Council, AR at 1-6, making the ALJ's ruling the "final decision" of the
12 Commissioner as that term is defined by 42 U.S.C. § 405(g).  On April 3, 2012, Plaintiff timely
13 filed the present action challenging the Commissioner's decision.  Dkt. 1, 3.

## II.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Duncan bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.  DECISION BELOW

On March 11, 2011, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since June 19, 2007, the alleged onset date.

3. The claimant has the following severe impairments: hepatitis, hypertension, mild emphysema, alcohol dependence, major depressive disorder, and anxiety disorder not otherwise specified.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except he should avoid concentrated exposure to hazardous machinery and work at unprotected heights.  The claimant can understand, remember and carry out simple instructions and some complex instructions.  He can interact appropriately with supervisors, coworkers and the public.  The claimant can respond appropriately to changes in a routine work setting.

6. The claimant is capable of performing past relevant work as a fitter/welder.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

REPORT AND RECOMMENDATION - 5

7.  The claimant has not been under a disability, as defined in the Social Security Act, from June 19, 2007, through the date of this decision.

AR at 33-42.

## VI.  ISSUES ON APPEAL

The principal issues on appeal are:

1.  Did the ALJ err at step four in finding that Plaintiff can perform his past work as a fitter/welder as generally performed?

2.  Did the ALJ's residual functional capacity assessment and hypothetical question posed to the vocational expert account for all of Plaintiff's limitations?

Dkt. No. 15 at 1-2.

## VII.  DISCUSSION

A.  <u>The ALJ Erred at Step Four.</u>

  1.  <u>The VE Misapprehended the ALJ's Limitation on Working at Unprotected Heights and Provided Conflicting Testimony.</u>

As part of her residual functional capacity ("RFC") assessment, the ALJ found that Plaintiff should avoid concentrated exposure to work at unprotected heights.[2] AR at 36.  The ALJ included that limitation in the hypothetical posed to the vocational expert ("VE") at the administrative hearing, but the VE's testimony shows that she interpreted that limitation to prohibit climbing rather than work at unprotected heights.  *See* AR at 86 (VE testimony that a

---

[2] The written decision as a whole clarifies that the Plaintiff should avoid concentrated exposure to unprotected heights and hazardous machinery *without his corrective lenses*, but the bolded paragraph constituting the ALJ's RFC assessment does not include that qualifier.  AR at 36, 39.  There is no evidence in the record regarding a fitter/welder's ability, as the job is generally performed, to wear corrective lenses while performing job duties.  Because the ALJ phrased her hypothetical without reference to the hypothetical worker's ability to wear glasses (AR at 85-86), and thus applied her limitations more broadly, the Court construes the ALJ's RFC assessment to be more restrictive than the whole of the written decision suggests: in other words, the ALJ's RFC assessment does not depend on Plaintiff wearing his glasses (even though the medical evidence supporting the unprotected-heights and hazardous-machinery limitations suggests that those limitations are in place only *if the Plaintiff did not wear his glasses*, and not if he is able to do so (AR at 469, 475)).

person with Plaintiff's RFC could perform his past job as a fitter/welder as generally performed (as defined by the Dictionary of Occupational Titles ("DOT") 819.361-010), *assuming that he would not be required to climb a ladder*). In her written decision, the ALJ reasoned that because the DOT provides that the fitter/welder position does not require working from high exposed places, Plaintiff could perform the fitter/welder job as generally performed. AR at 42. The ALJ also noted that Plaintiff indicated that his previous work did not involve any climbing.[3] *See* AR at 372.

But the DOT does provide that the job requires "occasional" climbing, up to one-third of the workday. *See* DOT 819.361-010. Climbing is defined as "[a]scending or descending ladders, stairs, scaffolding, ramps, poles, and the like, using feet and legs or hands and arms." Selected Characteristics of Occupations Defined in the Revised DOT, Appendix C. Thus, the VE's testimony that Plaintiff can perform the job of fitter/welder as defined in the DOT is somewhat confusing, given that the VE testified that the hypothetical individual could perform the job provided that he or she was not on a ladder, and yet the DOT defines the job as requiring at least some climbing of ladders and/or similar structures. Though the VE testified that her testimony was consistent with the DOT,[4] she did not acknowledge nor explain the climbing discrepancy or address how a ladder restriction would limit Plaintiff's ability to perform his past relevant work. *See* AR at 92.

---

[3] It is unclear why the ALJ included this fact, given that the ALJ did not address whether Plaintiff could perform his past relevant work *as actually performed*.

[4] The ALJ asked the VE if her testimony was consistent with the job descriptions in the DOT, and the VE answered in the affirmative. AR at 92. Plaintiff incorrectly avers that the ALJ failed to ask this question (Dkt. 15 at 11), and the Commissioner fails to address this misrepresentation of the record.

REPORT AND RECOMMENDATION - 7

Nonetheless, if the VE had simply detoured from the ALJ's limitation on unprotected heights to a reference to ladders, then the misunderstanding may have been harmless because DOT 819.361-010 specifically provides that the fitter/welder position does not require work at high exposed places, and that — not climbing — is the condition limited by the ALJ. A climbing prohibition is not coterminous with a prohibition on working at unprotected heights, as demonstrated by the DOT's definition of the fitter/welder job that requires some climbing but does not entail work in high exposed places. *See* DOT 819.361-010. Clearly, it can be imagined that some climbing leads to destinations other than high exposed places, and that some climbing occurs in locations other than high exposed places.

But the VE went on to muddy the waters even further by testifying that fitter/welders sometimes need to "work at heights" (AR at 95), though she did not specify whether the heights were unprotected nor whether the amount of work performed at heights would constitute "concentrated exposure," such that it would be precluded under the ALJ's hypothetical. The VE's testimony is therefore at least arguably internally inconsistent and must be clarified. *See* Social Security Ruling ("SSR") 00-4p, 200 WL 1898704, *4 (Dec. 4, 2000) ("If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."). Without clear testimony that Plaintiff can perform the job of fitter/welder, despite his limitation on working at unprotected heights, or a definitive explanation of a deviation from the DOT, the ALJ's step-four finding cannot stand. *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).[5]

---

[5] The Commissioner's briefing curiously does not address this argument in discussing the ALJ's step-four findings. *See* Dkt. 16 at 11-17.

REPORT AND RECOMMENDATION - 8

      2.      <u>The VE's Testimony is DOT-Consistent Regarding Hazardous Machinery.</u>

The record is somewhat clearer as to the VE's understanding of the ALJ's limitation on work involving concentrated exposure to hazardous machinery. Though the ALJ's written discussion of Plaintiff's RFC indicates that Plaintiff's hazardous-machinery limitation applies if Plaintiff lacked his corrective lenses, the ALJ more broadly posited to the VE that the hypothetical worker "should avoid concentrated exposure to hazardous machinery," which is the same language used in the bolded paragraph constituting the ALJ's RFC assessment. *Compare* AR at 36 *with* AR at 86 (neither mentioning that the machinery limitation applies only when Plaintiff is not wearing his glasses). The VE testified that a person with, *inter alia*, that limitation could perform the job of fitter/welder, but qualified that answer with a vague reference to a presumption that a "hazard" was not involved. AR at 86. The VE then went on to describe a fitter/welder's job as requiring use of a torch, and at least occasional exposure to cranes and trucks. AR at 92-94.

Despite Plaintiff's suggestion that a torch, in particular, should be classified as hazardous machinery,[6] the ALJ clearly included a hazardous machinery limitation in her hypothetical, and thus the VE was aware of that limitation and yet testified that a person with that limitation could nonetheless perform the duties of a fitter/welder. This testimony is consistent with the DOT, which provides that exposure to DOT-defined "hazards" are not present in the fitter/welder position. *See* DOT 819.361-010 (listing that exposure to moving mechanical parts, electric shock, high exposed places, radiation, explosives, and toxic caustic chemicals are "not present" for this position); *see also* SSR 96-9p, 1996 WL 374185, at *9 (Jul. 2, 1996) (defining "hazards" for purpose of the DOT). None of the DOT-defined

---

[6] Again, the Commissioner's briefing does not address this issue and thus provides no assistance in interpreting the record.

REPORT AND RECOMMENDATION - 9

"hazards" necessarily include a torch, crane, or truck. The ALJ was therefore entitled to rely on the VE's testimony and no error occurred as to the limitation on hazardous machinery.

B.  <u>The ALJ Did Not Err in Crafting Either the RFC Assessment or the Hypothetical Question.</u>

Plaintiff argues that the ALJ erred because she found at step three that he had mild to moderate limitations as to concentration, persistence, and pace, and yet failed to include any concentration limitations in either the RFC assessment or the hypothetical question posed to the VE. Dkt. 15 at 13-15.

Plaintiff's argument fails to appreciate the distinction between step-three findings and an RFC assessment. *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, *4 (Jul. 2, 1996) (explaining the distinction between the inquiries at various steps of the sequential process). At step three, the ALJ evaluated the "paragraph B" criteria, *inter alia*, to determine the severity of Plaintiff's mental impairments. *See* AR 35-36. The ALJ found that Plaintiff had "mild to moderate" limitations as to concentration, persistence, and pace, which is one of the "paragraph B" criteria. AR at 35. In assessing Plaintiff's RFC later in the written decision, the ALJ did not explicitly address any concentration deficits, but did provide that Plaintiff "can understand, remember and carry out simple instructions and some complex instructions." AR at 36.

Contrary to Plaintiff's argument, the ALJ did properly account for Plaintiff's concentration deficits by limiting Plaintiff to "simple" and "some complex" instructions in the RFC assessment and hypothetical question, because the medical evidence supported that limitation. *See, e.g.*, AR at 499 (E. Andrea Shadrach, Psy.D., found Plaintiff had "good" ability to understand and remember very short and simple instructions, and has "mild to moderate" ability to understand, remember, and carry out complex instructions). A finding

REPORT AND RECOMMENDATION - 10

regarding the "paragraph B" criteria is not necessarily directly transferable to an RFC assessment, because the inquiries at those steps in the sequential process are not identical. *See* SSR 96-8p. The ALJ appropriately accounted for Plaintiff's concentration deficit in the RFC assessment by limiting him to simple and some complex instructions, and included that limitation in the hypothetical question. Plaintiff has therefore failed to show error. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174-75 (9th Cir. 2008).

Furthermore, though Plaintiff argues that he could not perform the mental demands of the fitter/welder position in light of the VE's testimony that the job requires carrying out complex instructions, as explained in the previous paragraph Dr. Shadrach found Plaintiff had a mild to moderate ability to understand, remember, and carry out complex instructions, which supports the ALJ's finding that Plaintiff has the RFC to understand, remember, and carry out "some complex instructions." AR at 36. Plaintiff has not identified error in the ALJ's RFC assessment, nor has he shown inconsistency between the ALJ's RFC assessment and the VE's testimony or the DOT. Thus, Plaintiff has failed to establish error relating to concentration limitations.[7]

//
//
//
//

---

[7] Plaintiff's briefing also contends that the ALJ did not make a step-four finding as it relates to Plaintiff's past work as actually performed, and that the ALJ did not make any step-five findings. Dkt. 15 at 1, 2. It is undisputed that those findings are not included in the ALJ's decision, but it is also undisputed that the ALJ was not required to make such findings. Plaintiff appears to have included those arguments in the event that the Commissioner would attempt to provide *post hoc* rationalizations. But the Commissioner did not do so (see Dkt. 17 at 2, 6), and thus the Court need not address those arguments.

REPORT AND RECOMMENDATION - 11

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions. A proposed order accompanies this Report and Recommendation.

DATED this 1st day of November, 2012.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge